**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION**

STACY NAGAN, individually and on behalf
of all others similarly situated,

                Plaintiff,

                vs.                Case No.: 19-cv-00170

OPTIO SOLUTIONS, LLC, doing business
as QUALIA COLLECTION SERVICES,

                Defendant.

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE
FAIR DEBT COLLECTION PRACTICES ACT**

       This action is brought by Plaintiff, STACY NAGAN, individually and on behalf of all others similarly situated, against Defendant, OPTIO SOLUTIONS LLC, doing business as QUALIA COLLECTION SERVICES ("QCS"), based on the following:

**I.    PRELIMINARY STATEMENT**

       1.    Plaintiff has brought this action individually and on behalf of all others similarly situated for the illegal practices of Defendant when attempting to collect an alleged debt from them in violation of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692-1692p and the Rosenthal Fair Debt Collection Practices Act, California Civil Code §§ 1788 *et seq*.

       2.    Such practices include attempting to collect consumer debts by engaging in conduct prohibited by, or failing to engage in conduct required by, the FDCPA.

       3.    The FDCPA regulates the behavior of "debt collectors" (including collection agencies, collection attorneys, debt buyers) when attempting to collect a consumer debt. Congress found "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors" which "contribute to a number of personal bankruptcies,

marital instability, loss of jobs, and invasions of individual privacy." 15 U.S.C. § 1692(a). The FDCPA was expressly adopted "to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote uniform State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).

4. The FDCPA, at 15 U.S.C. § 1692c, prohibits when and with whom a debt collector may communicate when attempting to collect a debt and, at 15 U.S.C. § 1692b, limits communications with third parties to the collection of "location information."

5. When collecting or attempting to collect a debt, the FDCPA bars a debt collector's use of: (a) harassing, oppresive, and abusive conduct; (b) false, deceptive, or misleading means or representations; and (c) unfair or unconscionable means. 15 U.S.C. §§ 1692d, 1692e, and 1692f. Each of those Sections contain a list of specific *per se* violations but they are nonexclusive and do not limit the general application of each Section's broad prohibitions.

6. When the collection process starts, the FDCPA requires a debt collector to provide a consumer with basic debt information and the consumer's right to debt-verification. 15 U.S.C. § 1692g.

7. When the collection process escalates to litigation, the FDCPA prohibits lawsuit from being commenced in a distant venue. 15 U.S.C. § 1692i.

8. Although the FDCPA is not a strict-liability statute, "most infractions result in liability" without proof of *scienter* unless the specific infractions include an element of intent or purpose, or the debt collector can affirmatively prove a *bona fide* error under 15 U.S.C.

§ 1692k(c). *Oliva v. Blatt, Hasenmiller, Leibsker & Moore LLC*, 864 F.3d 492, 502 (7th Cir. 2017), *cert. denied,* 138 S. Ct. 1283 (2018).

9. A debt collector's conduct violates the FDCPA when viewed from the perspective of an "unsophisticated debtor." *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). "The unsophisticated consumer is uninformed, naive, and trusting, but possesses rudimentary knowledge about the financial world, is wise enough to read collection notices with added care, possesses reasonable intelligence, and is capable of making basic logical deductions and inferences." *Williams v. OSI Educ. Servs., Inc*, 505 F.3d 675, 678 (7th Cir. 2007) (internal editing notations and quotation marks omitted).

10. A single violation is sufficient to establish liability. *Nielsen v. Dickerson*, 307 F.3d 623, 640 (7th Cir. 2002).

11. When a debt collector fails to comply with the FDCPA "with respect to any person," it "is liable to such person in an amount equal to the sum of" "any actual damage sustained," "additional" or statutory damages, costs, and reasonable attorneys' fees. Statutory damages are limited: a plaintiff may recover no more than $1,000, and the class may recover up to $500,000 or 1% of the debt collector's net worth, whichever it less.

12. Plaintiff is seeking, both individually and on behalf of all others similarly situated, such relief as is allowed under FDCPA including, without limitation, statutory damages, attorney fees and costs.

## II. PARTIES

13. NAGAN is a natural person.

14. At all times relevant to this lawsuit, NAGAN was a citizen of, and resided in, the City of Appleton, Outagamie County, Wisconsin.

15. QCS is a for-profit limited liability company formed under the laws of the State of Delaware.

16. On information and belief, QCS maintains its principal place of business at 1444 North McDowell Boulevard, City of Petaluma, Sonoma County, California.

17. QCS' registered agent for service in Wisconsin is Corporation Service Company, 8040 Excelsior Drive, Suite 400, Madison, WI 53717.

### III. JURISDICTION & VENUE

18. Jurisdiction of this Court arises under 28 U.S.C. §§ 1331 and 1337.

19. Venue is appropriate in this federal district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to claims occurred within this federal judicial district, and because Defendant is subject to personal jurisdiction in the State of Wisconsin at the time this action is commenced.

### IV. FACTS

20. QCS regularly engages in the collection of defaulted consumer debts.

21. QCS regularly collects or attempts to collect debts alleged to be owed to others.

22. QCS is a business the principal purpose of which is the collection of defaulted consumer debts.

23. In attempting to collect debts, QCS uses the mails, telephone, the internet, and other instruments of interstate commerce.

24. QCS mailed or caused to be mailed a letter dated February 5, 2018 (the "Letter") to NAGAN.

25. A true and correct copy of the Letter is attached as *Exhibit A*, except that the undersigned has partially redacted it.

26. The Letter alleged NAGAN had incurred and defaulted on a financial obligation (the "Debt"), namely a credit card debt allegedly owed to Capital One, N.A. ("Capital One").

27. The alleged Debt arose out of one or more transactions in which the money, property, insurance, or services that were the subject of the transactions were primarily for personal, family, or household purposes.

28. The Letter was QCS' first written communication to NAGAN in an attempt to collect the Debt.

29. On information and belief, sometime prior to February 5, 2018, the creditor of the Debt either directly or through intermediate transactions assigned, placed, or transferred the debt to QCS for collection.

30. The Letter offered to settle the debt for a 50% discount.

31. The Letter stated the settlement offer expired 45 days from the date of the Letter.

32. The statement, "This offer will expire 45 days from the date of this letter" is false, deceptive, and misleading.

33. In fact, QCS had authority to extend the settlement offer beyond the 45 day deadline set in the Letter.

34. On information and belief, QCS had authority to increase the amount of the discount offered to NAGAN after the 45 day deadline.

35. QCS' statement that "This offer will expire 45 days from the date of this letter" is materially false, deceptive, and misleading because it influences the unsophisticated consumer's decision to pay the debt.

36. The statement is materially fase, deceptive, and misleading because it creates a false sense of urgency in the unsophisticated consumer to accept the settlement offer as quickly as possible.

37. The settlement offer discourages the unsophisticated consumer from disputing the debt because the time required to submit a dispute and receive a response might exceed the 45 day deadline to accept the offer.

38. The Letter itemizes the "Balance Due" as follows:

| | |
|---|---|
| Principal: | $357.77 |
| Fees: | $235.00 |
| Interest: | $70.51 |
| Balance Due: | $663.28 |
| Settlement Amount: | $331.64 |

39. By refering to the amount of the Debt as the "Balance Due", and by itemizing the balance due, the Letter gives the impression that the Debt was increasing.

40. In fact, the original creditor had charged-off the account more than eighteen months prior to the Date of the Letter and the Debt was static and unchanging.

41. On information and belief, "charge-off" is an accounting procedure by which a receivable—such as the amount owed to a creditor on a loan—is deemed sufficiently unlikely to be paid that the creditor can no longer represent the receivable as an asset and, for an accrual-based taxpayer, all or a portion of the amount charged off may be treated as a loss for which the creditor receives a deduction for purposes of determining the creditor's federal income taxes. See, Victoria J. Haneman, The Ethical Exploitation of the Unrepresented Consumer, 73 Mo. L. Rev. 707, 713-14 (2008).

42. On information and belief, an account will go into default (*i.e.*, there has been a failure to make a timely payment in accordance with the terms of the debt) before it is charged-off. Thus, a charged-off debt is always in default but not all defaulted debts are charged-off.

43. On information and belief, Capital One does not intend to add and, as a matter of practice, does not add interest or other charges to the balance of its charged-off credit card accounts.

44. On information and belief, Capital One does not prepare and send monthly periodic billing statements on charged-off credit card accounts.

45. Once the Debt was charged-off, its balance remained static and unchanging.

46. Once the Debt was charged-off, Capital One did not add interest or other charges to the account.

47. The Letter falsely implied to the unsophisticated consumer that interest and other charges could accrue on the charged-off Debt.

48. Such false implication arises from the totality of the Letter including, but not limited to, (A) itemizing post-charge-off interest and other charges, and (B) describing the amount owed as the "Balance Due."

49. The Letter is materially false, deceptive, and misleading to an unsophisticated consumer "[b]ecause these consumers must often make difficult decisions about how to use scarce financial resources, it is plausible that the fear of 'late charges and other charges' mishgt influence these consumers' choices." *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 368 (7th Cir. 2018).

50. A rational person with limited financial resources would, based on the Letter, choose to pay the Debt over an otherwise identical debt which accurately implied the balance remained static.

51. QCS' use of a form letter like the Letter—which falsely implies the Debt could increase—competitively disadvantages debt collectors who collect static debts without obscuring the fact those debts' balances are static.

52. The Letter does not clearly and unambiguously state the amount of the Debt.

53. The Letter deprived NAGAN of truthful, non-misleading, information in connection with QCS' attempt to collect a debt.

54. On information and belief, the Letter was created by merging information specific to a debt and consumer with a template to create what is commonly called a "form letter."

55. Consequently, on information and belief, QCS caused the same form collection letter to be mailed to others who, like NAGAN, reside in Wisconsin.

## V. CLASS ALLEGATIONS

56. Defendant's conduct is consistent with its policies and practices when attempting to collect debts from consumers. Consequently, this action is brought by Plaintiff, both individually and on behalf of all other persons similarly situated, pursuant to Rule 23 of the Federal Rules of Civil Procedure.

57. Plaintiff is seeking to certify a class pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3).

58. ***Class Definition.*** The Class consists of: All natural persons to whom Defendant mailed a written communication in the form of ***Exhibit A*** to an address in the State of Wisconsin during the Class Period which begins on February 1, 2018 and ends on February 22, 2019

59. The identities of the Class members are readily ascertainable from the business records of Defendant and those entities on whose behalf Defendant attempts to collect debts.

60. ***Class Claims.*** The Class claims include all claims each Class member may have for a violation of the FDCPA arising from Defendant having mailed a written communication in the form of ***Exhibit A*** to such Class member.

61. This action has been brought, and may properly be maintained, as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community interest in the litigation:

(a) ***Numerosity.*** On information and belief, the Class is so numerous that joinder of all members would be impractical and includes at least 40 members.

(b) ***Common Questions Predominate.*** Common questions of law and fact exist as to all members of the Class and those questions predominate over any questions or issues involving only individual class members because such questions and issues concern the same conduct by Defendant with respect to each Class member.

(c) ***Typicality.*** The claims of the Plaintiff are typical of the Class members because those claims arise from a common course of conduct engaged in by Defendant.

(d) ***Adequacy.*** Plaintiff will fairly and adequately protect the interests of the Class members insofar as she has no interests that are adverse to those of the Class members. Moreover, Plaintiff is committed to vigorously litigating this matter and retained counsel experienced in handling

consumer lawsuits, complex legal issues, and class actions. Neither Plaintiff nor her counsel have any interests which might cause them not to vigorously pursue the instant class action.

62. Certification of a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is appropriate in that the questions of law and fact common to the Class members predominate over any questions affecting individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

63. Based on discovery and further investigation (including, but not limited to, disclosure by Defendant of class size and net worth), Plaintiff may, in addition to moving for class certification using modified Class claims, Class definitions, or Class periods, seek class certification only as to particular issues as permitted under Fed. R. Civ. P. 23(c)(4).

## VI. FIRST CAUSE OF ACTION
## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

64. The factual allegations in the preceding paragraphs are realleged and incorporated by reference.

65. QCS is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

66. The Debt is a "debt" as defined by 15 U.S.C. §1692a(5).

67. NAGAN is a "consumer" as defined by 15 U.S.C. § 1692a(3).

68. *Exhibit A* is a "communication" as defined by 15 U.S.C. § 1692a(2).

69. The use and mailing of *Exhibit A* by Defendant in an attempt to collect the Debt violated the FDCPA in one or more following ways:

    (a) Using a false, deceptive, or misleading representation or means in violation of 15 U.S.C. § 1692e;

(b)     Failing to provide a written notice containing the information required under 15 U.S.C. § 1692g(a) either with the initial communication or within five days after the initial communication.

## VII.   SECOND CAUSE OF ACTION
### VIOLATIONS OF THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT

70.     The factual allegations in the preceding paragraphs are realleged and incorporated by reference.

71.     QCS is a "debt collector" as defined by California Civil Code § 1788.2(c).

72.     The Debt is a "consumer debt" as defined by California Civil Code § 1788.2(f).

73.     NAGAN is a "debtor" as defined by California Civil Code § 1788.2(h).

74.     The Debt is a "debt" as defined by California Civil Code § 1788.2(d).

75.     The Debt arises from a "consumer credit transaction" as defined in California Civil Code § 1788.2(e).

76.     The use and mailing of *Exhibit A* by Defendant was "debt collection as defined by California Civil Code § 1788.2(b).

77.     The use and mailing of *Exhibit A* by Defendant in an attempt to collect the Debt violated the Rosenthal FDCPA, California Civil Code §1788.17.

## VIII.   PRAYER FOR RELIEF

78.     WHEREFORE, Plaintiff demands judgment against Defendant as follows:

**A.     For the FIRST CAUSE OF ACTION**

(a)     An Order certifying this action as a class action pursuant to Rule 23(c)(1)(A) of the Federal Rules of Civil Procedure including, but not limited to, defining the Class and the Class claims, issues, or defenses, and

appointing the undersigned counsel as class counsel pursuant to Rule 23(g);

(b) An award of statutory damages for Plaintiff and the Class pursuant to 15 U.S.C. § 1692k(a)(2);

(c) An award to Plaintiff for services on behalf of the Class as determined in the discretion of the Court;

(d) Attorney's fees, litigation expenses, and costs pursuant to 15 U.S.C. § 1692k(a)(3);

(e) An award of actual damages to Plaintiff and the Class to the extent the recovery of reasonable attorneys' fees and costs cause a negative tax consequence to Plaintiff and/or the Class; and

(f) For such other and further relief as may be just and proper.

**B. For the SECOND CAUSE OF ACTION**

(a) An award of statutory damages for Plaintiff pursuant to California Civil Code §1788.30(b);

(b) Attorney's fees, litigation expenses, and costs pursuant to California Civil Code §1788.30(c);

(c) An award of actual damages to Plaintiff to the extent the recovery of reasonable attorneys' fees and costs cause her to suffer a negative tax consequence; and

(d) For such other and further relief as may be just and proper.

### IX. JURY DEMAND

79. Trial by jury is demanded on all issues so triable.

Dated: February 1, 2019

　　　　　　　　　　　　　　　　　*s/Francis R. Greene*
　　　　　　　　　　　　　　　　　　*Francis R. Greene*
Francis R. Greene (WI Bar # 1115577)
Philip D. Stern (NJ Bar # 045921984)
Andrew T. Thomasson (NJ Bar # 048362011)
　　*Attorneys for Plaintiff, Stacy Nagan*
STERN•THOMASSON LLP
3010 South Appleton Road
Menasha, Wisconsin 54952
Telephone (973) 379-7500
E-mail: Philip@SternThomasson.com
E-mail: Andrew@SternThomasson.com
E-mail: Francis@SternThomasson.com