UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

STACY NAGAN, individually and on
behalf of all others similarly situated,

        Plaintiff,

     v.                        Case No. 19-C-170

OPTIO SOLUTIONS LLC,
d/b/a Qualia Collection Services,

        Defendant.

---

## DECISION AND ORDER

---

Plaintiff Stacy Nagan filed this action alleging Defendant Optio Solutions LLC violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, *et seq.*, by sending Plaintiff a debt collection letter that was deceptive and misleading to an unsophisticated consumer. This matter comes before the court on Plaintiff's motion for summary judgment as to Defendant's affirmative defenses. Because one of the affirmative defenses asserted by Defendant is lack of standing, the motion raises a threshold issue that determines whether the court has jurisdiction in the first place. For the following reasons, Plaintiff's motion will be partially granted.

## BACKGROUND

On February 5, 2018, Defendant mailed Plaintiff a letter in an attempt to collect a debt. The letter itemized the debt owed in an account summary section as follows:

        Principal:    $357.77
        Fees:         $235.00
        Interest:     $70.51
        Balance Due: $663.28

Dkt. No. 1-1 at 2. The letter also included an offer of settlement, which was $331.64. The letter advised:

> Your account has been assigned to our agency for collection. The creditor to whom the debt is owed is Capital One, N.A. We want to settle this account and we're willing to settle for 50% of your balance due! To take advantage of this substantial savings, please send your payment using the remittance below. In addition, payments may be made 24 hours a day, 7 days a week at www.payQCS.com, or by calling (844) 598-5454. To discuss your bill with a representative, call (844) 598-5454. This offer will expire 45 days from the date of this letter.

*Id.* On February 1, 2019, Plaintiff filed this lawsuit alleging that Defendant violated the FDCPA and the Rosenthal Fair Debt Collection Practices Act, California's counterpart to the FDCPA, by sending Plaintiff and other Wisconsin consumers this collection letter, which she claims made numerous false, deceptive, and misleading statements to collect a debt.

## LEGAL STANDARD

Summary judgment is appropriate when the movant shows that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the court must view the evidence and make all reasonable inferences that favor them in the light most favorable to the nonmoving party. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's

case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## ANALYSIS

Plaintiff asserts that she is entitled to summary judgment on the following affirmative defenses: Plaintiff lacks Article III standing to pursue the allegations in the complaint; Plaintiff's claims alleged in the complaint are barred by the statute of limitations; Plaintiff failed to mitigate her damages; Plaintiff's claims may be precluded, in whole or in part, to the extent Plaintiff's purported damages, if any, were caused by Plaintiff's acts and/or omissions; Plaintiff's claims may be precluded, in whole or in part, to the extent Plaintiff's purported damages, if any, were caused by third parties over whom Defendant had no control or authority; to the extent Defendant's actions violated the law, such actions were the result of a bona fide error notwithstanding reasonable procedures designed to avoid such errors; to the extent Defendant's actions violated the law, such actions were neither intentional, nor willful; and Plaintiff's claims are barred by release, waiver, unclean hands, laches, estoppel and/or res judicata. All but the first of these relatively standard place-holding defenses are commonly asserted by defendants at the inception of a lawsuit and are generally abandoned as it becomes clear through discovery that they lack merit. In fact, Defendant has withdrawn all but one of these affirmative defenses in response to Plaintiff's motion. For this reason, motions seeking summary judgment on affirmative defenses are generally given little attention at the inception of a case. Standing is different, and thus seldom is raised simply as an affirmative defense. If a serious issue of standing exists, the defendant ought to assert it in a motion to dismiss before even answering the complaint, since it makes any further work on the case for both the court and the parties unnecessary. Unfortunately, Defendant did not file such a motion

3

here, and the standing issue has come before the court in the form of a motion for summary judgment on Defendant's affirmative defenses. It is to that issue that the court now turns.

As an initial matter, Defendant asserts that Plaintiff's standing argument "flatly ignores Optio's substantive position in this matter and the fundamental dispute in this lawsuit." Def.'s Resp. Br. at 6, Dkt. No. 67. It maintains that, if the court grants its motion for summary judgment, "Plaintiff certainly lacks Article III standing." *Id.* Defendant's argument ignores that standing is a jurisdictional matter that must be addressed before the merits. *See Morrison v. YTB Int'l Inc.*, 649 F.3d 553, 536 (7th Cir. 2011). A finding that plaintiff has standing "simply means that the plaintiff is entitled to 'walk through the courthouse door' and raise his grievance before a federal court; it is a threshold determination that is conceptually distinct from whether the plaintiff is entitled to prevail on the merits." *Wooden v. Bd. of Regents of Univ. Sys. of Georgia*, 247 F.3d 1262, 1280 (11th Cir. 2001); *see also United States v. One-Sixth Shares of James J. Bulger in All Present and Future Proceeds of Mass Millions Lottery Ticket No. M246233*, 326 F.3d 36, 41 (1st Cir. 2003) ("Courts should not . . . conflate the constitutional standing inquiry with the merits determination that comes later."). In short, the only question before the court at this point is whether Plaintiff has standing to assert her claims, regardless of their merit.

Article III of the United States Constitution limits the jurisdiction of federal courts to actual "cases" or "controversies" brought by litigants who demonstrate standing. *Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 886 (7th Cir. 2017). "The 'irreducible constitutional minimum of standing' consists of three elements: injury in fact, causation, and redressability." *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). The plaintiff bears the burden of pleading sufficient factual allegations that "plausibly suggest" each element. *Id.* (citation omitted).

4

The Supreme Court's decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), guides the court's decision, here. In that case, the plaintiff alleged that the defendant, which operated an internet "people search engine," violated the FCRA by gathering and disseminating incorrect information about him, including that he was married, had children, was in his 50's, had a job, was relatively affluent, and held a graduate degree. *Id.* at 1546. The plaintiff did not allege that he suffered any harm as a result of these inaccuracies. The district court dismissed the complaint on the ground that the plaintiff had not properly pled an injury-in-fact as required by Article III. The Ninth Circuit reversed, holding that the plaintiff's allegation that the defendant had violated his statutory rights was sufficient to satisfy the injury-in-fact requirement of Article III. *Id.* The Supreme Court vacated the Ninth Circuit's decision, finding that the lower court failed to consider whether the plaintiff had alleged an injury-in-fact sufficient to confer standing.

In vacating the Ninth Circuit's decision, the Supreme Court emphasized the requirement that there must be an injury-in-fact, "the [f]irst and foremost' of standing's three elements." *Id.* at 1547 (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998)). It is not enough to allege a bare violation of law, the Court stated. "Injury in fact is a constitutional requirement, and it is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Id.* at 1547–48 (internal quotation marks and alterations omitted). "To establish standing," the Court noted, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* (quoting *Lujan*, 504 U.S. at 560). For an injury to be particularized, the Court explained, "it must affect the plaintiff in a personal and individual way." *Id.* at 1548 (internal quotation marks and citation omitted). To be concrete, "the injury must be '*de facto*'; that is, it must actually exist."

5

*Id.* (citation omitted). Concreteness means "'real,' and not 'abstract.'" *Id.* (citation omitted). "Concrete" is not the same as "tangible," however. *Id.* at 1549. In determining whether an intangible harm constitutes an injury-in-fact, the court must look at both history and the judgment of Congress. *Id.* This is because "'Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before.'" *Id.* (quoting *Lujan*, 504 U.S. at 580). For this reason, "'the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact,' such as where the statutory violation creates 'risk of real harm.'" *Evans v. Portfolio Recovery Assocs., LLC*, 889 F.3d 337, 344 (7th Cir. 2018) (quoting *Spokeo*, 136 S. Ct. at 1549). "In other words, a plaintiff in such a case need not allege any additional harm beyond the one Congress has identified." *Id.*

Defendant asserts that Plaintiff has not established that she suffered a concrete harm. It cites *Casillas v. Madison Avenue Associates, Inc.*, 926 F.3d 329 (7th Cir. 2019), to support its argument but that case is distinguishable from the case at hand. In *Casillas*, Madison Avenue Associates, Inc., a debt collector, sent Casillas a letter that described the process that the FDCPA requires for a debtor to obtain verification of a debt but failed to state that, to dispute the debt, Casillas must do so in writing. *Id.* at 331. The court observed that the only harm Casillas claimed to have suffered was the receipt of an incomplete letter and that Madison's mistake was nothing more than a procedural violation. *Id.* at 331–32. Finding "no harm, no foul," the court explained

> Casillas did not allege that Madison's actions harmed or posed any real risk to her interest under the Act. She did not allege that she tried to dispute or verify her debt orally and therefore lost or risked losing the statutory protections. Indeed, she did not allege that she ever even considered contacting Madison . . . . She complained only that her notice was missing some information that she did not suggest that she would ever have used.

*Id.* at 334. The Seventh Circuit held that Casillas' allegations of a bare procedural violation were insufficient to establish standing.

6

In this case, Plaintiff does not allege that she was deprived of notice of statutory rights but rather asserts that the letter was deceptive and that she did not receive substantive information. In particular, Plaintiff contends she was misinformed about the nature of the settlement offer as well as other details affecting the nature, character, and amount of her debt. She claims that the letter deprived her of truthful, non-misleading information in connection with Defendant's attempt to collect a debt and that she was misled and deceived by the letter. The court finds that Plaintiff has standing to bring her claims and is entitled to summary judgment on Defendant's affirmative defense.

## CONCLUISON

For these reasons, Plaintiff's motion for summary judgment (Dkt. No. 47) is **GRANTED-IN-PART** and **DENIED-IN-PART**. Defendant's affirmative defense that Plaintiff lacks Article III standing is dismissed with prejudice. Plaintiff's motion is denied as moot as to the remaining affirmative defenses at issue because Defendant has withdrawn those defenses.

**SO ORDERED** at Green Bay, Wisconsin this 13th day of May, 2020.

s/ William C. Griesbach  
William C. Griesbach, District Judge  
United States District Court